Molly E. Danahy
Rylee Sommers-Flanagan
Upper Seven Law
P.O. Box 31
Helena, MT 59624
(406) 998-6067
molly@uppersevenlaw.com
rylee@uppersevenlaw.com

Chad W. Dunn*
Sonni Waknin*
Bernadette Reyes*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90095
310-400-6019

*Attorneys for Plaintiffs*

*Pro Hac Vice *application forthcoming*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**

| | |
|---|---|
| WILLIAM WHITE, AVIS BALL, and FRANKLIN NEZPERCE,<br><br>*Plaintiffs*,<br><br>v.<br><br>BLAINE COUNTY, Montana; MILES HUTTON, DOLORES PLUMAGE, and SHANE FOX in their official capacities as members of the Blaine County Board of Commissioners; PAULY B. MILLER, in his official capacity as the Blaine County Clerk and Recorder; and SAVANNAH WENDELN, in her official capacity as the Elections Manager for Blaine County,<br><br>*Defendants*. | Case No. CV-26-327-GF-SPW<br><br>**COMPLAINT** |

## INTRODUCTION

1. The U.S. Supreme Court has long recognized "the basic principle of representative government" that "the weight of a citizen's vote cannot be made to depend on where he lives." *Reynolds v. Sims*, 377 U.S. 533, 567 (1964).

2. For over 13 years, the Blaine County Commissioner districts have violated this principle.

3. Blaine County adopted a district-based election system for its County Commission after a 2002 decision from the United States District Court for the District of Montana found that the County's at-large elections diluted American Indian[1] votes. *See United States v. Blaine Cnty.*, 4:99-cv-00122-PMP (D. Mont. 2002) (case number also reported as CV-S-99-122-GF-PMP), Dkt. 101, *aff'd.*, 363 F. 3d 897 (9th Cir. 2004) (affirming the district court's order enjoining the County from using at-large voting systems.).

[1] The terms "Native American," "American Indian," and "Indian," are used interchangeably throughout this Complaint to refer to the Indigenous peoples and tribes in and around Blaine County.

4. Blaine County has operated a district-based election system for its County Commissioner seats since 2002.

5. Since then, Blaine County has twice adopted malapportioned districting plans that diluted the votes of residents of the Fort Belknap Indian Reservation.

6. In January 2024, the Blaine County Commission ("Commission") adopted commissioner districts that were explicitly designed to maintain previously established racial demographics.

7. The 2024 commissioner districts are extremely malapportioned, with a maximum population deviation of 28.41%.

8. District plans that exceed a 10% maximum population deviation are presumptively unconstitutional. *See Evenwel v. Abbott*, 578 U.S. 54, 60 (2016).[2]

9. According to the numbers used by the Commission, Blaine County has a total population of 7,170. As such, the ideal population for each of Blaine County's three commissioner districts is 2,390.

[2] The "[m]aximum population deviation is the sum of the percentage deviation from perfect population equality of the most—and least—populated districts." *Evenwel*, 578 U.S. at 60 n.2.

10. District 1, described by the County as the "Majority American Indian District," has a population of 2,777—more than 16% higher than the ideal. District 1 has an American Indian population of 94.9%.

11. District 2, described by the County as the "majority Non-American Indian" district has a population of 2,098. That is almost 700 fewer people than District 1 and more than 12% lower than the ideal population. District 2 has a Non-American Indian population of 98.2%.

12. District 3, described by the County as the "Mix District," has a population of 2,295. That is almost 500 fewer people than District 1, and is approximately 4% lower than the ideal population. District 3 has an American Indian population of 46.4%.

13. The excessive population deviation between districts is completely unnecessary and violates the Fourteenth Amendment's one-person, one-vote requirement. *See Evenwel*, 578 U.S. at 60.

14. When adopting the 2024 plan, the Commission stated it was required to maintain "essentially the same" population percentages as the 2002 districts. Blaine County Resolution No. 2024-03. In support of this assertion, the Commission cited the 2002 federal court order and the subsequent 2002 Commission Resolution that established the first

Commission districts and set the total American Indian population of District 1 at 91.27%. *Id.*

15. But neither the 2002 court ruling, nor any other applicable law, requires Blaine County to pack American Indian voters into the same district plan that existed in 2002. Nor does the 2002 ruling somehow authorize the County to malapportion its districts in violation of one person, one vote.

16. Plaintiffs ask this Court to declare Blaine County's Commissioner district plan unconstitutional; enjoin Defendants from using the current district plan for the 2028 election and all future elections; and implement a new Commissioner district plan that complies with constitutional requirements.

## JURISDICTION AND VENUE

17. Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation of rights secured by the United States Constitution.

18. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this case arises under the Constitution and the laws of the United States, and Plaintiffs seek equitable relief to redress the deprivation of their right to vote.

19. This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, the Declaratory Judgment Act, and Federal Rules of Civil Procedure 57 and 65.

20. Plaintiffs bring their claim for costs and attorneys' fees pursuant to Federal Rule of Civil Procedure 54, 42 U.S.C. § 1988, and 52 U.S.C. § 10310(e).

21. This Court has personal jurisdiction over all Defendants because Defendants reside and maintain their offices within Montana.

22. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and will occur in this District.

## PARTIES

23. Plaintiff Avis Ball is a United States citizen and a resident of Blaine County. Plaintiff Ball is a qualified registered voter in Blaine County and lives in District 1.

24. Plaintiff Ball is an enrolled member of the Fort Belknap Indian Community.

25. Plaintiff Ball has voted in Blaine County Commissioner elections and intends to vote in future elections for Blaine County Commissioner.

26. Plaintiff Ball's right to vote has been violated because she has been forced to vote in a malapportioned district.

27. Plaintiff William White is a United States citizen and a resident of Blaine County. Plaintiff White is a qualified registered voter in Blaine County and lives in District 1.

28. Plaintiff White is an enrolled member of the Fort Belknap Indian Community.

29. Plaintiff White's right to vote has been violated because he has been forced to vote in a malapportioned district.

30. Plaintiff Franklin Nezperce is a United States citizen and a resident of Blaine County. Plaintiff Nezperce is a qualified registered voter in Blaine County and lives in District 2.

31. Plaintiff Nezperce is an enrolled member of the Fort Belknap Indian Community.

32. Plaintiff Nezperce's right to vote has been violated because he has been forced to vote in a malapportioned district.

33. Defendant Blaine County is a political and geographical subdivision of the State of Montana.

34. The official governing authority of Blaine County established under the laws of the State of Montana consists of the Blaine County Board of Commissioners, which exercises the legislative and executive powers of the county.

35. Defendants Miles Hutton, Dolores Plumage, and Shane Fox are members of the Blaine County Board of Commissioners. Each of these defendants resides in Blaine County and is sued in their official capacity.

36. Defendant Pauly B. Miller is the Clerk and Recorder and Election Administrator for Blaine County, Montana. He is responsible for and oversees the elections department, including administering elections for the Blaine County Commission. Defendant Miller is being sued in his official capacity.

37. Defendant Savannah Wendeln is the Election Manager and in that capacity is responsible for the administration of federal, state, county, city, and school district elections in Blaine County according to federal and state election law. Defendant Wendeln is a resident of Blaine County and is sued in her official capacity.

## LEGAL BACKGROUND

38. In *Reynolds v. Sims*, 377 U.S. 533 (1964), the Supreme Court held that the Fourteenth Amendment's Equal Protection Clause required the apportionment of state government representation to be done on the basis of population such that each person's vote would be weighed as equally as practicable as another person's vote.

39. The Court extended this requirement to local governing bodies in *Avery v. Midland Cnty.,* 390 U.S. 474, 479 (1968).

40. Apportionment plans with a maximum population deviation over 10% "create[] a prima facie case of discrimination and therefore must be justified by the State." *Brown v. Thomson*, 462 U.S. 835, 842–843 (1983). To justify such extreme population deviation, a jurisdiction must show that it made a "good faith effort" to achieve "as nearly of equal population as is practicable." *Reynolds,* 377 U.S. at 577.

## FACTUAL ALLEGATIONS

### I. Blaine County Demographics

41. Over the past two decades, Blaine County's Native American population has increased, while the white, non-Hispanic population has decreased.

42. In 2010, the total population of Blaine County was 6,491 according to the 2010 Decennial Census.

43. Native Americans made up 48.3% of the total population in 2010, while non-Hispanic white residents made up 47.9%.

44. From 2010 to 2020, the Native American population grew by about 4%, while the white population decreased by about 6%.

45. In 2020, the total population of Blaine County was 7,044 according to the 2020 Decennial Census.

46. By 2020, Blaine County's Native American population was 3,621 or 51.4%, while the non-Hispanic white population decreased to 2,942 or 41.8%.

47. Native Americans in Blaine County are about 45.9% of the total Citizen Voting Age Population ("CVAP") based on the American Community Survey ("ACS") 2023 5-year estimates.

48. According to the ACS 5-year estimates for 2023, non-Hispanic white voters in Blaine County comprise 49.0% of the total CVAP.

## II. Post 2020 Census Redistricting

49. After every decennial census, all districted legislative bodies are required to redistrict to ensure that they satisfy United States constitutional requirements.

50. Montana law provides that "[i]n each county of the state, following each federal decennial census, the board of county commissioners shall divide their respective counties into as many commissioner districts as there are county commissioners and ensure that the districts are as compact and equal in population and area as possible." Section 7-4-2102(1), MCA.

51. Blaine County last redistricted in 2024.

52. In the redistricting resolution, Resolution No. 2024-03, the County detailed its approach or lack thereof.

53. The Commissioners stated, "Blaine County is required to maintain commissioner districts having essentially the same population percentages recognized in Resolution 2002-06[.]" Blaine County Resolution No. 2024-03.

54. The Commissioners cited the 2002 district court ruling enjoining the use of at-large elections and the subsequent 2002 County resolution adopting a district plan for this proposition. *Id.*

55. The Commissioners described the districts as "District #1–Majority American Indian," "District #2–Majority Non-American Indian," and "District #3–Mix District."

56. Attached to the 2024 Resolution is the 2023 Blaine County Court Order that approved the Commissioner Districts.

57. According to the 2023 Court Order, the current Blaine County Commissioner Districts were created in 2013.

58. The Court documented disproportionate population changes within districts between 2013 and 2023 but found, without explanation, that "the county commissioner districts . . . are as compact and equal in population and area as possible." Resolution 2024-03 at 4.

59. It appears that the Commissioners did not make any changes to the 2013 districts, despite the disproportionate population growth within the districts. *Id.*

60. The 2013 districts were also malapportioned.

61. The 2013 plan over-populated the Majority-American Indian district and underpopulated the Majority Non-American Indian district. The maximum population deviation in 2013 was 14.70%.

62. A 14.70% deviation is presumptively unconstitutional.

63. Instead of rectifying the malapportionment from the 2013 plan, the Commissioners appeared to keep the same districts in 2024, which made the malapportionment worse.

64. The 2024 district plan has a maximum population deviation of at least 28.41%. *See* Blaine County Resolution No. 2024-03.

65. The table below uses the numbers cited by the county and shows the district populations and percent deviation from the ideal population for each district in the 2024 plan.

| District | Total Population | Percent Deviation |
|---|---|---|
| 1 | 2,777 | +16.19% |
| 2 | 2,098 | -12.22% |
| 3 | 2,295 | -3.97% |

66. With a population of 2,098, District 2 is the least populous and has a negative 12.22% deviation from the ideal population of 2,390.

67. The most populous district, District 1, has a plus 16.19% deviation from the ideal population, with a population of 2,777.

68. The maximum population deviation is the sum of the deviation from the ideal in the most and least populated districts. As such, the maximum population deviation for the 2024 plan is 28.41%—the sum of the deviations in Districts 1 and 2.

69. The population deviation between Districts 1 and 3 is also significant, at 20.16%.

70. The total population and district numbers cited by the Commissioners in the 2024 Resolution are different from the total population and district population numbers provided by the United States Census Bureau and Montana State Library's Geo-Enabled Elections Information Hub.

71. Using the 2020 Decennial Census numbers, the maximum population deviation of the 2024 plan is even higher at 32.07%.

72. The 2024 plan is presumptively unconstitutional because its population deviation exceeds 10%. *Evenwel,* 578 U.S. at 60; *see also Brown v. Jacobsen*, 590 F. Supp. 3d 1273, 1286 (D. Mont. 2022) (finding the Montana Public Service Commission Districts unconstitutional because they had not been redrawn since 2003 and had a maximum population deviation of roughly 24%).

73. Blaine County lacks a good faith basis for the excessive population deviation because it adopted the 2024 districts based on express racial targets.

74. The County's stated reasoning for adopting its district plan was that the district court rulings in *Blaine County* and the subsequent County resolution adopting a district-based plan required the County to maintain "essentially the same population percentages" for each district as in the 2002 plan. Blaine County Resolution No. 2024-03.

75. Neither the 2024 Resolution nor the court order adopting it references any "population percentage" other than the American Indian and Non-American Indian population percentage for each district.

76. Nothing in the *Blaine County* Court's 2002 findings of fact and conclusions of law, nor its order adopting the remedial district plan, sets a racial target for Commissioner districts. This is because racial targets are unconstitutional. *Cf. Cooper v. Harris*, 581 U.S. 285, 299–301 (2017) (striking down electoral districts drawn using express racial target).

77. Even if the County's consideration of a racial target was permissible, the County bypassed traditional redistricting principles, including equalizing the population and area across districts.

78. Indeed, the County's map does not attempt to equalize the land area of the districts.

79. A districting map that equalizes the land area of the districts, while also being nearly equal in total population is possible.

80. If the district populations were equalized, American Indians would likely be able to elect candidates of choice in two districts, rather than being packed into one district.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of One Person, One Vote
### Fourteenth Amendment Equal Protection Clause
### 42 U.S.C. § 1983

81. Plaintiffs repeat, replead, and incorporate by reference, as though fully set forth in this paragraph, all allegations in this Complaint.

82. States and political divisions may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Voters "ha[ve] the constitutional right to have [their] vote counted with substantially the same weight as that of any other voter."

*Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo.*, 397 U.S. 50, 53 (1970). Local jurisdictions are subject to one person, one vote requirements. *Avery,* 390 U.S. at 479-481; *Bd. of Estimate of City of New York v. Morris*, 489 U.S. 688, 692 (1989).

83. A county commission district plan with a maximum population deviation exceeding 10% is presumptively unconstitutional. *Brown*, 462 U.S. at 842–43; *Evenwel*, 578 U.S. at 60.

84. Districted jurisdictions must demonstrate that they attempted to equalize population in good faith. *See Kirkpatrick v. Preisler*, 394 U.S. 526, 530–31 (1969) (concluding the state is required to "make a good-faith effort to achieve precise mathematical equality").

85. The current Blaine County Commission map has a total population deviation between 28.41 and 32.07%.

86. Defendants achieved this deviation by simply maintaining the previously enacted districts without accounting for population changes.

87. Defendants did so based on the incorrect presumption that they were required to maintain "essentially the same" racial population percentages as the districts first drawn in 2002.

88. Blaine County's Commissioner district map is unconstitutionally malapportioned. There is no legitimate justification for the Commissioners' failure to equalize population.

89. Continued use of Blaine County's Commissioner district map would violate Plaintiffs' Fourteenth Amendment rights.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

A. Declare that the 2024 Blaine County Commissioner district map violates the Fourteenth Amendment for malapportionment because the map's maximum population deviation exceeds 10%, and there is no legitimate governmental reason for the population disparities;

B. Permanently enjoin Defendants from administering, enforcing, preparing for, or in any way permitting the nomination or election of members of the Blaine County Commission from the illegal Commissioner districts under the 2024 Blaine County Commissioner map. Plaintiffs have no adequate remedy at law other than the judicial relief sought herein, and unless Defendants are enjoined from using the 2024 Blaine County Commissioner district map, Plaintiffs will be irreparably injured by the continued violation of their statutory rights;

C. Order Blaine County to implement and use a valid Commissioner District plan that equalizes the total population;

D. Award Plaintiffs their costs, expenses, disbursements, and reasonable attorneys' fees pursuant to Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and 52 U.S.C. § 10310(e);

E. Retain jurisdiction and render any and all further orders that the Court may find necessary to cure the violation; and

F. Grant any and all further relief to which Plaintiffs may show themselves to be entitled or that the Court deems Plaintiffs entitled to including actual damages, compensatory damages, nominal damages, punitive damages, statutory interest, and injunctive relief.

Dated: November 4, 2026.

Respectfully submitted,

*/s/ Molly E. Danahy*

Molly E. Danahy
Rylee Sommers-Flanagan
Upper Seven Law
P.O. Box 31
Helena, MT 59624
Telephone: (406) 396-3373

Chad W. Dunn*
Sonni Waknin*
Bernadette Reyes*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90095
Telephone: 310-400-6019